UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAZARO A. GARCIA RODRIGUEZ, (A 074-273-693),<br>Petitioner,<br>v.<br>CHESTNUT,<br>Respondent. | No. 1:26-cv-04548-DJC-CKD<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of Cuba, entered the United States via a homemade boat in 1991 then adjusted status to that of a lawful permanent resident in 1995. ECF No. 1 at 5; 7-1 at 2. He is married and has four U.S. citizen children. ECF No. 1 at 5. His parents were also U.S. citizens. Id. In 1996, Petitioner was convicted under Florida Statute § 893.13(2)(a) and (b) for purchase or possession with intent to purchase cannabis and cocaine and § 893.13(6)(a) and (b) for possession of cocaine and unlawful possession of cannabis. ECF No. 7-3 at 2-4. On November 4, 2025, when Petitioner returned to the United States after a trip to Cuba, U.S. immigration officials detained him and initiated removal proceedings against him, alleging he is deportable under 8

U.S.C. § 1227(a)(2)(B)(i) for having a conviction related to a controlled substance. ECF No. 7-1 at 2; 7-2 at 4. After approximately four months in detention, Petitioner received a bond hearing. ECF No. 7-4. The Immigration Judge ("IJ") denied bond, finding Petitioner to be a danger to the community. Id. The IJ's order did not address under which section of law Petitioner is detained nor who bore the burden of proof at the bond hearing. Id. Removal proceedings before the Executive Office for Immigration Review ("EOIR") are pending and Petitioner remains detained at the California City detention facility.

Petitioner filed a petition for writ of habeas corpus on June 12, 2026, arguing that prolonged detention without a bond hearing violates his Fifth Amendment right to due process. ECF No. 1. Based on the information in the initial petition, the district court judge assigned to this case ordered Respondent to address whether this case differed from Morillo v. Albarran, No. 1:25-cv-01533-DJC-AC 2025 WL 3190899 (E.D. Cal. Nov. 15, 2025) and other similar cases decided by this court. ECF No. 6. In its answer, Respondent clarified that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) and the case is therefore materially distinguishable from Morillo and others where the government alleges mandatory detention under § 1225(b)(2). ECF No. 7. Respondent further argued that mandatory detention pursuant to § 1226(c) is constitutional; that Petitioner has not exhausted his administrative remedies because he waived appeal of the IJ's bond denial; and that if the Court orders a bond hearing, the government should not bear the burden to justify detention by a clear and convincing evidence standard. Id. After the appointment of counsel, Petitioner submitted a reply raising an as-applied constitutional challenge to Petitioner's detention. ECF No. 12. The reply also argued that Petitioner's convictions do not necessarily render him subject to § 1226(c); that the bond hearing was null, does not satisfy due process, and undermines Respondent's position that § 1226(c) controls; and that appeal of the bond denial would be a futile attempt to exhaust legal remedies. Id.

## II. Legal Standards

### A. Constitutional Framework

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

(citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**B. Applicable Detention Statute**

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While § 1226(a) allows the Attorney General to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added). See also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General ("AG") deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk). Subsection (c)(1)(C) mandates detention for any noncitizen who is deportable by reason of having committed any offense covered in 8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D). 8 U.S.C. § 1226(c)(1)(C). Based on his conviction for possession of cocaine, a controlled substance listed under schedule II of 8 U.S.C. § 812, Petitioner appears deportable under 8 U.S.C. § 1227(a)(2)(B)(i) and therefore subject to mandatory detention pursuant to § 1226(c). [1] See 8 U.S.C. §§ 1226(c)(1)(C), 1227(a)(2)(B)(i); 21 U.S.C. §§ 802(6), 812.

**III. Exhaustion**

**A. Due Process Claim**

Having found that § 1226(c) governs Petitioner's detention, the undersigned rejects Respondent's argument that Petitioner has failed to exhaust administrative remedies due to waiving his right to appeal the IJ's bond denial. Respondent asserts, and the undersigned agrees,

[1] As discussed in section III.B. below, Petitioner's argument that his convictions do not render him subject to mandatory detention can be raised before an IJ pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999).

that Petitioner is properly detained under § 1226(c).[2] Noncitizens who, like Petitioner, are detained under § 1226(c) are not entitled to a bond hearing before an IJ. 8 U.S.C § 1226(c)(1); 8 U.S.C § 1226(c)(4). They may only request a "Joseph" hearing if they wish to challenge whether they are subject to § 1226(c). Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). It does not appear that the March 2, 2026, bond hearing was a Joseph hearing, as the IJ's order made a finding regarding Petitioner's danger to the public but makes no mention of the appropriate detention authority. ECF No. 7-4. The March 2, 2026, bond hearing was premised on either an erroneous determination or inadvertent ignorance of the appropriate detention authority. Appealing the result of a bond hearing to which Petitioner was not statutorily entitled would be futile. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting S.E.C. v. G.C. George Sec. Inc., 637 F.2d 685 (9th Cir. 1981) to note that exhaustion may be waived "where…pursuit of administrative remedies would be a futile gesture"). Therefore, as to Petitioner's Fifth Amendment due process claim regarding prolonged detention, the undersigned finds that Petitioner has met the exhaustion requirement.

**B. Challenge to Applicability of § 1226(c)**

As to only Petitioner's fourth claim that his criminal convictions do not render him subject to § 1226(c), the undersigned finds that Petitioner has not exhausted his administrative remedies. Petitioner is entitled to a Matter of Joseph hearing to contest the applicability of § 1226(c) and must pursue that remedy with EOIR before this court may address it. Joseph, 22 I. & N. Dec. 799; Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)

**IV. Due Process Analysis**

The petition raises an as-applied, procedural due process challenge to the constitutionality of Petitioner's mandatory detention. At this point, Petitioner has been detained for nearly nine months. Although he was afforded a bond hearing, it was premised on a misapplication of the law. See section III.A., supra. The IJ only stated that the Petitioner "is a danger to the

[2] Even if Respondents initially detained Petitioner's under § 1226(a), their incorrect initial determination does not negate the fact that Petitioner is subject to mandatory detention per § 1226(c) due to his criminal convictions.

community" but did not discuss what evidentiary standard was used nor who bore the burden of proof. ECF No. 7-4. The record therefore does not demonstrate that Petitioner has been afforded an appropriate or adequate hearing to address his challenge to prolonged detention under § 1226(c).

**A. Viability of As-Applied Challenges to Mandatory Detention**

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 at 531 (2003). However, the Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Id. at 513, 529 n.12, 530. Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Other Circuit Courts of Appeal have concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a

bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds this authority persuasive and agrees that Demore does not bar an as-applied challenge to prolonged detention without an appropriate hearing to determine whether such detention is justified.[3] The next step is to determine the appropriate framework in which to analyze Petitioner's procedural due process argument.

### B. Mathews v. Eldridge Procedural Due Process Test

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accord with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention under § 1226(c). The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the factors identified by federal courts when deciding whether detention under § 1226(c) has become unreasonably prolonged. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at

---

[3] As discussed in sections III.A. and IV, the March 2026 was not an appropriate or adequate hearing for the purposes of challenging prolonged § 1226(c) detention.

335.

**i. Private interest**

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged. See German Santos v. Warden Pike Cty. Correctional Facility, 965 F.3d 203, 211 3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021). While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Indeed, other courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the length of detention at issue here. See, e.g., Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. See Lopez v. Garland, 631 F. Supp. 3d 870, 880-81 (E.D. Cal. 2022) (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). The undersigned takes judicial notice of the publicly-available EOIR Automated Case Information website which indicates that Petitioner is scheduled for a master calendar (preliminary) hearing on July 28, 2026. See https://acis.eoir.justice.gov/en/caseInformation, EOIR Automated Case Information. An individual hearing on the merits of Respondent's claim has not been scheduled yet. Additionally, a hearing before an Immigration Judge is not the end of Petitioner's removal proceedings. Either party may choose to appeal the IJ's decision to the Board of Immigration Appeals and Petitioner could ultimately seek review by the Ninth Circuit Court of Appeals. Therefore, based on its duration to date and the likelihood of continued mandatory detention during all phases of removal

proceedings, the undersigned finds Petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

**ii. Risk of erroneous deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds). Indeed, "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)). Additional procedures are likely to be particularly meaningful. A bond hearing in which the *government* bears the burden of proof would cast new light on evidence and factors that might mitigate any potential risk of flight or ongoing danger to the community, such as the fact that Petitioner's conviction occurred approximately 30 years ago and he has strong family ties to the U.S. Accordingly, the second Mathews factor also weighs in Petitioner's favor.

**iii. Government Interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515). Courts have also recognized that the detention of noncitizens during removal proceedings can serve the legitimate government purpose of preventing flight. Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citing Demore, 538 U.S. at 528). Thus, in some general way, the

government has an interest in the detention of non-citizens held under § 1226(c). However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). In Petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal. Administrative burden is a legally cognizable interest under Mathews, but Respondent's interest is diminished by the low fiscal and administrative burdens associated with a bond hearing. See D. L.C. v. Wofford, 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

### V. Remedy

For reasons explained above in the Mathews analysis, the undersigned finds a bond hearing to be the appropriate relief in this case. At the bond hearing, the government should bear the burden of demonstrating by clear and convincing evidence that Petitioner presents a risk of flight or danger. See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut, No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing). This is the appropriate burden given the liberty interests at stake. See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be ordered to provide Petitioner with a constitutionally adequate bond hearing before an Immigration Judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of any order resolving the § 2241 petition.

3. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondent shall return all of Petitioner's documents and possessions at the time of release.

5. Any order not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 21, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 garc4548.imm.frs